## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                  Case No. 04-CR-71

**NICOLE BOWLING**
    **Defendant.**

### SENTENCING MEMORANDUM

Defendant Nicole Bowling pleaded guilty to accessory after the fact of armed robbery (count one), and aiding and abetting armed robbery (count nine). Defendant acted as the getaway driver for her husband, Terry Bowling ("Terry"), and his co-actor, Lamar Ray ("Ray"), in their robberies of two check cashing businesses, Money Express and Cashland. Terry and Ray completed the crimes by abducting employees of the businesses from their homes and forcing them to travel to the business and provide cash.

The probation office prepared a pre-sentence report (PSR), which recommended an offense level of 27 on count one (base level 14, U.S.S.G. § 2X3.1(a)(1), plus 2 because the property of a financial institution was taken or the taking of such property was an object of the offense, § 2B3.1(b)(1), plus 6 because a firearm was "otherwise used," § 2B3.1(b)(2)(B), plus 4 because a victim was abducted, § 2B3.1(b)(4)(A), and plus 1 for loss amount, § 2B3.1(7)(B)), and 31 on count nine (base level 20, U.S.S.G. § 2B3.1(a), plus 2 because the property of a financial institution was taken or the taking of such property was an object of the offense, § 2B3.1(b)(1), plus 5 because a firearm was "brandished or possessed," § 2B3.1(b)(2)(C), and plus 4 because a victim was abducted, §

2B3.1(b)(4)(A)).  Following the application of the multi-count adjustment under U.S.S.G. § 3D1.4 and a reduction for acceptance of responsibility under § 3E1.1, the PSR recommended a final level of 30.  Coupled with defendant's criminal history category of I, the PSR set an imprisonment range of 97-121 months.

Defendant objected to two of the PSR's guideline calculations and requested a non-guideline sentence under 18 U.S.C. § 3553(a).  The government opposed defendant's guideline objections but did move for a departure under U.S.S.G. § 5K1.1 to reward defendant for her substantial assistance in prosecuting her husband and Ray.  In this memorandum, I discuss the guideline objections and the departure motion, and set forth the reasons for the sentence imposed.

## I.  SENTENCING PROCEDURE

I follow a three-step sentencing procedure in light of United States v. Booker, 543 U.S. 220 (2005).  First, I determine the advisory guideline range, resolving any disputes necessary to that determination.  Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements.  Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a).  E.g., United States v. Peralta-Espinoza, 413 F. Supp. 2d 972, 974 (E.D. Wis. 2006).

## II.  DISCUSSION

**A.   Guideline Determinations**

    **1.   Firearm Enhancement**

In preparing for the sentencings of defendant and her husband, Terry, which were

2

scheduled on the same day, I noticed that defendant's PSR assigned a 6 level enhancement under U.S.S.G. § 2B3.1(b)(2)(B) on the first robbery. The parties in their plea agreement stipulated to a 5 level enhancement on this count under § 2B3.1(b)(2)(C). Based on my review of the evidence, it appeared that the firearm was "brandished or possessed," not "otherwise used." Further, Terry's PSR recommended a 5 level enhancement for this same robbery. I found that it would be unfair and create unwarranted disparity to impose a higher enhancement on Nicole Bowling than on Terry Bowling, particularly in light of the fact that it was Terry who actually entered the victim's house and the business, and possessed the gun. Both sides agreed that I should impose the 5 level enhancement. I proceeded then to consider defendant's written objections.

**2.     Minor Role Reduction**

Defendant's first objection was to the denial of an adjustment for mitigating role under U.S.S.G. § 3B1.2 on both counts. Section 3B1.2 may be applied in cases in which more than one participant was involved in committing the offense. It provides a range of adjustments for a defendant who plays a part in committing the offense that makes her substantially less culpable than the average participant. U.S.S.G. § 3B1.2 cmt. n.3(A). Under § 3B1.2(a), the defendant's offense level may be reduced by four if she was "a minimal participant in any criminal activity." Her offense level may be reduced by two under § 3B1.2(b) if she was a "minor participant" in the crime. Application note 4 indicates that the "minimal participant" adjustment applies to defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.

3

U.S.S.G. § 3B1.2 cmt. n.4. Application note 5 indicates that a "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. The defendant bears the burden of showing by a preponderance of the evidence that she is entitled to a reduction under § 3B1.2. United States v. Mitchell, 178 F.3d 904, 910 (7th Cir. 1999).

I denied the reduction on count one, the robbery of Money Express. On this count, defendant was charged as an accessory after the fact, resulting in a base level 6 levels lower than that applicable to the underlying offense. U.S.S.G. § 2X3.1(a)(1). Application note 2 to U.S.S.G. § 2X3.1 provides that the mitigating role reduction is normally inapplicable in an accessory after the fact case because an adjustment for reduced culpability is already incorporated in the base offense level. U.S.S.G. § 2X3.1 cmt. n.2. Thus, to the extent that defendant argued for the reduction based on the fact that her involvement was limited to picking up her husband and his co-actor, Ray, after they committed the robbery of Money Express, her guideline range already had been reduced by 6.

The application note leaves open the possibility that a defendant could still obtain the role reduction in an accessory after the fact case,[1] but defendant failed to demonstrate entitlement to such in the present case. The evidence showed that defendant knew what Terry and Ray had done, and was willing to assist them to get away. Defendant offered no persuasive argument that her role in the conduct for which she was held responsible

---

[1] For example, she might show that her role even after the fact was minor. See United States v. Williams, 302 F. Supp. 2d 945, 950 n.5 (E.D. Wis. 2004) (noting that a defendant may receive a minor role reduction, even when he is held responsible only for his own conduct rather than the conduct of the entire group).

4

under the guideline on this count was minor, justifying a further reduction.

I also denied the reduction on count nine, the robbery of Cashland. While defendant was assessed with the same offense level as an aider and abetter on this count as her co-actors, the evidence demonstrated greater involvement than just driving. Defendant traveled with her husband from Gary, Indiana to participate in this crime. She also participated in casing the victim's house with her husband prior to the commission of the crime. On the day of the crime, she drove Terry and Ray to the victim's house and drove them away from Cashland after they obtained the money.

It was true, as defendant argued, that she did not plan the offense, carry a gun, enter the victim's house, or enter Cashland. Her role was nonetheless essential to the success of the scheme, which required a different driver after the money was obtained. Further, defendant knew exactly what the plan was; she was not kept in the dark, and, as noted, she participated in casing the victim's house beforehand. She also knew that her co-actors would be armed and planned to make the victim believe that they had kidnaped his son in order to coerce his cooperation. Thus, she knew that her cohorts would be engaging in the egregious conduct which caused her to receive substantial guideline enhancements. Finally, she and her husband received a cut for their role in the robbery.

Although defendant may have followed directions from Terry and Ray, she was not substantially less culpable than them in the Cashland robbery. The fact that others were more involved may result in a role enhancement for them, but it does not necessarily result in a role reduction for the less involved participant. United States v. Castillo, 148 F.3d 770, 776 (7th Cir. 1998); see also United States v. Scroggins, 939 F.2d 416, 423 n.9 (7th Cir. 1991) (stating that if "each defendant, while playing a substantially different role, had a

5

relatively equal, albeit different, impact on the societal interests protected by the criminal proscription," then no adjustment is appropriate). A defendant can still be a significant participant in a robbery even though she did not personally carry a gun or accost the victim. See United States v. Mitchell, 178 F.3d 904, 910 (7th Cir. 1999). Contrary to defendant's suggestion, getaway drivers do not ipso facto occupy a minor role. See United States v. Adams, 286 F. Supp. 2d 1017, 1019 (E.D. Wis. 2003). In fact, getaway drivers are often denied minor role reductions because they are essential in robbery schemes. See, e.g., United States v. McNeil, 106 Fed. Appx. 294, 301 (6th Cir. 2004); United States v. Hafiz, 129 F.3d 1011, 1013 (8th Cir. 1997) (citing United States v. Pinkney, 15 F.3d 825, 828 (9th Cir. 1994)). In this case, by being a white female, when the robbers sought by police were black males, defendant provided them with cover in making their escape.

Defendant noted, as to both counts, that she was recruited by her husband, and that he and Ray directed her activities. She also stated that Terry was abusive and deceitful. I did not really see this as altering her role, which was important to the success of the scheme.[2] Defendant also noted that Terry and Ray sought to intimidate and manipulate her after the fact. Again, this had nothing to do with her role in the crimes, although I did consider it under U.S.S.G. § 5K1.1(a)(4) and § 3553(a).

For all of these reasons, the objections on minor role were overruled.

### 3. Victim Abduction

Defendant also objected to the 4 level enhancements for victim abduction on both counts under U.S.S.G. § 2B3.1(b)(4)(A). Defendant claimed that the victims were only

---

[2]However, I did consider this factor under § 3553(a).

"restrained" under U.S.S.G. § 2B3.1(b)(4)(B). The argument was contrary to the plain language of the guidelines, which provides that: "'Abducted' means that a victim was forced to accompany an offender to a different location." U.S.S.G. § 1B1.1 cmt. n.1(A). That is precisely what happened in the present case. The victim in both robberies was accosted in his or her home, then forced to accompany the robbers to their places of employment to obtain money. It may be true that the victims were also restrained in their homes before they were taken away, i.e., abducted, but that did not mean that defendant should not receive the abduction enhancement.

### 4. Conclusion as to Guidelines

Based on my alteration of the firearm enhancement on count one, the final offense level changed somewhat. The level on count one became 26, while the level on count nine remained 31. This produced 1 ½ units under U.S.S.G. § 3D1.4, which resulted in a 1 level addition, for an adjusted level of 32 and a final level of 29 following the reduction for acceptance of responsibility under § 3E1.1. The imprisonment range therefore became 87-108 months.

## B. Departure

The government moved for a departure under U.S.S.G. § 5K1.1 to reward defendant for her substantial assistance. In ruling on a substantial assistance motion, I consider:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

7

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, but the extent of the departure is within my discretion. I attempt to link the departure to the structure of the guidelines and typically use the method suggested by the Seventh Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. See United States v. Washington, 293 F. Supp. 2d 930, 934 (E.D. Wis. 2003). In unusual cases, I may grant greater reductions for factors present to an extraordinary degree. See, e.g., United States v. Smith, 359 F. Supp. 2d 771, 775 (E.D. Wis. 2005).

In the present case, I found that defendant was entitled to a 2 level reduction under the first factor. Her information was significant and useful in getting Ray to plead, although there were other cooperators who played a role in bringing that about as well. She was also significant in obtaining the convictions of her husband for both armed robbery and witness tampering based on his attempt to get her to lie about their involvement. Indeed, defendant was instrumental in securing the evidence needed for the witness tampering count, providing the government with letters Terry had written.

I found that defendant was entitled to 1 level under the second factor. Her information was not, in her initial statements to police, completely truthful, in that she

8

denied knowing about the Money Express robbery beforehand. Only later did she tell the whole truth, which was that she knew what was to happen all along.

I awarded 1 level under the third factor. Defendant's cooperation was limited to debriefing and agreeing to testify; she did not actually testify at trial or engage in pro-active cooperation. I awarded 1 level under the fourth factor, based on the pressure from Terry and Ray not to cooperate and tell the truth.

Finally, I awarded 1 level for timeliness; defendant partially confessed immediately upon her arrest, but only later did she completely come clean such that she was valuable to the government.

Therefore, I granted a total reduction of 6 levels, making the range 46-57 months. I turned finally to imposition of sentence under § 3553(a).

**C.    Section 3553(a)**

In imposing sentence, the court must consider all of the factors set forth in 18 U.S.C. § 3553(a):

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

9

     (4)     the advisory guideline range;

     (5)     any pertinent policy statements issued by the Sentencing Commission;

     (6)     the need to avoid unwarranted sentence disparities; and

     (7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in sub-section (a)(2).

### 1. Nature of Offense

Defendant participated in two terrible crimes, in which victims were abducted from their homes at gunpoint and forced to travel to their places of work to give the robbers money. It is true, as discussed above, that defendant did not plan the crimes, personally enter the homes or carry a gun. However, the evidence showed that she knew what was to happen and traveled from Indiana to participate in one of the robberies. By serving as the driver, she allowed her co-actors to evade detection. Further, as one of the victims said at sentencing, while defendant's cooperation was appreciated in avoiding a trial in Ray's case, defendant could have prevented their ordeal by coming forward prior to the commission of the crimes.

### 2. Character of Defendant

Defendant was twenty-four years old and had no prior record. She had a seven year old daughter and was by all accounts a good mother. Defendant had been married to her co-defendant, Terry Bowling, and I did not doubt that it was his prodding that got her into her first trouble with the law. There was no indication that she would commit crimes

10

on her own. By the time of sentencing, defendant had divorced Terry, which seemed like a good step in getting her life back on track. Terry was apparently abusive, cheated and did not work. Defendant had the support of her parents in moving forward, and her current boyfriend made positive statements.

Defendant had some health problems, though none appeared to be terribly serious. She also suffered from depression and anxiety, for which she took medication. She reported regular use of marijuana before her arrest, and her first test on pre-trial release was positive but all others since negative. She was fully compliant with all of her conditions of release during the two plus years this case was pending and, as noted, provided full cooperation to the government during that time.

Defendant had a solid employment history, working at the Jewish Community Center ("JCC") for the past two-plus years and at Bel-Air Health Care for three years before that. The court received positive letters from many of her co-workers.

### 3. Purposes of Sentencing

Defendant did not appear to have substantial correctional treatment needs, although she would likely benefit from mental health and drug treatment. The victim businesses were owed about $12,000 in restitution, which defendant could obviously better pay in the community. Further, I did not believe that defendant presented a danger to the public or a risk of recidivism, given her lack of record, performance on pre-trial release, and willingness to sever herself from Terry Bowling. However, given the seriousness of the crimes, I had to impose a significant prison sentence to provide just punishment, promote respect for law and deter others.

11

### 4. Guidelines

The guidelines called for a term of 46-57 months, after the departure. Under all of the circumstances, I found a sentence somewhat below that range sufficient but not greater than necessary. First, defendant's involvement in these crimes stemmed from her abusive and dysfunctional relationship with her husband. No one doubted that. Given her lack of record, I did not believe that she would commit any crimes on her own initiative. The PSR contained evidence that Terry was abusive, did not work, and had strange people in their house. It was his previous relationship with Ray that led to his and defendant's involvement in these robberies. Defendant had no criminal ties of her own.

I have previously written about this type of situation, in which a woman with little or no criminal propensity is drawn into crime due to her relationship with a man, often an abusive man. See United States v. Greer, 375 F. Supp. 2d 790, 794-95 (E.D. Wis. 2005). When a court finds this type of situation, it may conclude that the guidelines produce a sentence that is greater than necessary to reflect the defendant's culpability, deter her from re-offending and protect the public. That is particularly true where, as here, she has extricated herself from the bad relationship and turned things around. I found that defendant was not, under current conditions, a risk to re-offend or a danger to the public.

Second, the guidelines did not account for the positives in defendant's character, as reflected in the many letters I received. The director of health, recreation and fitness at the JCC indicated that defendant's performance had been outstanding, that she had a caring personality, and the staff found her patient and very approachable. He stated: "I can not explain enough how nice Nicole is and how great she is at her position." The camping services director at Camp Interlaken JCC similarly wrote that defendant was caring and

12

responsible. The administrative director wrote that she had nothing but the highest praise for defendant. She stated that defendant has progressed to the point of hiring and scheduling staff. Several others at the JCC said much the same. Friends wrote that defendant was responsible, hard working, a good mother and caring. Her mother noted that defendant was an excellent student and worked with special needs children. She further stated that defendant helped her shop, which was difficult due to her health problems. She also attested to Terry's role in bringing her daughter to this point.

Under all of the circumstances, I found a sentence of 30 months sufficient but not greater than necessary. This provided adequate punishment and deterrence of others based on defendant's role in this serious criminal conduct, while recognizing the positives in defendant's character and the low probability of her re-offending. Because this sentence was based on the particular facts of the case, and defendant's significant cooperation, it did not create unwarranted disparity.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 30 months. I further ordered her to make restitution to Money Express and Cashland, joint and several with Bowling and Ray. Finally, I ordered that she serve a supervised release term of three years, with conditions including, <u>inter alia</u>, drug and mental health treatment, and regular monthly restitution payments.

Dated at Milwaukee, Wisconsin, this 20th day of December, 2006.

/s Lynn Adelman

_____

LYNN ADELMAN
District Judge